UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HALI M.,[1]

                              Plaintiff,             **DECISION AND ORDER**

v.                                           1:23-cv-818-JJM

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

        Plaintiff brings this action pursuant to 42 U.S.C. §405(g) and §1383(c)(3) to review the final determination of the Commissioner of Social Security that she was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [12, 14].[2] The parties have consented to my jurisdiction [22]. Having reviewed their submissions [12, 14, 21], this action is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

## BACKGROUND

        The parties' familiarity with the 944-page administrative record [5] is presumed. On August 23, 2018, plaintiff filed an application for child's insurance benefits and supplemental security income, alleging a disability beginning May 15, 2016. Administrative Record [5] at 22. 110-11. At the time, plaintiff complained of chronic pain, titanium rods in her right leg,

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering.  All other page references are to the CM/ECF pagination.

depression, muscle spasms, ADHD, and allergies. Id. at 91-92. Plaintiff's claim was initially denied. Id. at 22, 107. Plaintiff requested a hearing. Id. at 22.

### A.    The Hearing

On April 4, 2022, Administrative Law Judge ("ALJ") Stephan Bell conducted an in-person hearing. [5] at 41-67. Plaintiff was represented by an attorney. Id.  At the hearing, plaintiff testified about the course of treatment she received for her leg deformities and related issues, as well as her treatment for ADHD, anxiety, and depression. Id. at 46-53.

Plaintiff also testified that she suffered from frequent headaches. Id. at 54. She indicated that she talked to her neurologist about them and tried different medications, but that none seemed to help. Id. The headaches caused her to be sensitive to light. Id. She would need to close her eyes and lie down for "20 minutes or so" for the headache to subside. Id. at 60. She was going to see a headache specialist about them. Id. at 54.

Plaintiff testified that she rarely left the house. Id. at 55. She could "clean up after [her]self", bathe and dress herself, "[t]ry to get some sort of movement in, like . . . trying to go around the block", but otherwise she could not do much. Id. She stated that her ability to lift was compromised by her balance issues, but that she could lift a bag of groceries. Id. at 59-60.

A vocational expert testified that a person with limitations consistent with ALJ Bell's findings could perform work in the national economy. Id. at 62-63.

### B.    The ALJ's Decision

ALJ Bell issued a Notice of Decision denying plaintiff's claim. Id. at 22-34. She found that plaintiff had the following severe impairments: right leg status-post tibial osteotomy, revisions, hardware removal, and rod fixation; left leg torsional malalignment;

mild thoracolumbar scoliosis; panic disorder; depressive disorder; and ADHD. Id. at 24. While she acknowledged plaintiff's complaint of frequent headaches that were not alleviated by with mediation, she found that there were no medical records indicating that any symptoms of acute migraines were observed on exam or that she received any emergent treatment. Id. at 25. She also noted that plaintiff was referred to a headache specialist for treatment of "persistent migraines" (see [5-1] at 932), but found that an MRI of her brain and orbits was "unremarkable". [5] at 25; 856-57.

ALJ Bell found that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except that she could climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; she could never work at unprotected heights, around moving mechanical parts, operate a motor vehicle, or work in vibration; she could perform simple, routine tasks and make simple work-related decisions. Id. at 27.

While plaintiff had no past relevant work, ALJ Bell found that there were jobs that existed in significant numbers in the national economy that she could perform. Id. at 33-34. Accordingly, she found that plaintiff was not disabled. Id. at 34.

## C.    Relevant Medical Evidence

In reaching her determination, ALJ Bell reviewed plaintiff's testimony, her medical treatment history, and the medical opinion evidence – much of which is irrelevant to the issues raised on appeal. Id. at 27-33.

On October 22, 2018, consultative medical examiner Elike Lorensen, M.D., examined plaintiff and noted her back, hip, and leg issues. Id. at 711-14. She opined that plaintiff

-3-

had (among other things) moderate-to-marked limitations for bending, lifting, reaching, and squatting. Id. at 714.

On October 31, 2018, state agency medical examiner J. Lawrence reviewed plaintiff's symptoms, the consultative examiners' opinions, the longitudinal treatment records and found that plaintiff's medical claims were only partially consistent with the evidence of record. Id. at 98-99. Dr. Lawrence gave "great weight" to the opinion of Dr. Lorensen, and assessed plaintiff with limitations in (among other things) lifting and carrying. Id. at 100.

On January 24, 2019, treating neurologist Nicholas Silvestri, M.D., assessed plaintiff with (among other things) "[n]ew daily persistent headache", and wrote that these headaches are very likely "migrainous in nature". [5] at 809. Dr. Silvestri offered plaintiff low-dose Amitriptyline as preventative therapy, but she declined at that time in favor of medical cannabis. Id.

On August 11, 2021, plaintiff again reported to Dr. Silvestri that she was having daily headaches, which were "mostly throbbing and holocephalic and often associated with photo- and phonophobia as well as nausea". Id. at 928. Dr. Silvestri noted that he had increased the dosage of Amitriptyline, but that it made no difference in plaintiff's headache frequency or severity. Id. He diagnosed plaintiff with migraine without aura. Id. at 931.

## ANALYSIS

Plaintiff argues that ALJ Bell's decision was legally deficient because: (1) she failed to find that her migraine headaches were a severe impairment and failed to account for the associated limitations in her RFC; and (2) she improperly relied on her own lay judgment in determining plaintiff's lifting carrying and reaching limitations. Plaintiff's Memorandum of Law [12-1] at 14-32.

**A.      Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) ("[a]lthough . . .  the evidentiary threshold for the substantial evidence standard 'is not high,' . . . the substantial evidence standard is also not merely hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations").

An adjudicator evaluating a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.      Did the ALJ properly assess plaintiff's claim of migraine headaches?**

Plaintiff argues that ALJ Bell failed to properly assess her migraine headaches at step two and failed to account for any associated limitations in her RFC. Plaintiff's Memorandum of Law [12-1] at 14-19. I agree.

At step two, the ALJ must determine whether plaintiff has a medically determinable impairment, or combination of impairments, that is "severe". 20 C.F.R. §404.1520(a)(ii). A medically determinable impairment is one that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical

and laboratory diagnostic techniques". §416.921. A "severe" impairment (or combination of impairments) is a medically determinable impairment that "significantly limit[s] your physical or mental ability to do basic work activities". §404.1522(a).

Here, ALJ Bell considered plaintiff's complaint of daily headaches or migraines that were not alleviated with medication, but she discounted that claim due to the lack of any examination records reflecting active symptoms of an acute migraine or emergent treatment. Id. at 25. She noted that plaintiff was referred to a headache specialist for treatment of "persistent migraines". Id.; see [5-1] at 932. She also noted that an MRI of plaintiff's brain and orbits was "unremarkable". [5] at 25; 856-57.

While she does not say so, from the context it appears that ALJ Bell found plaintiff's headaches not to be a medically determinable impairment because of the lack of objective support for such a condition. See id. at 25. Social Security regulations state that a medically determinable impairment "must be established by objective medical evidence from an acceptable medical source". 20 C.F.R. §416.921. Subjective symptoms "will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present". §416.929(b). The Commissioner looks for "[m]edical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, [to] show the existence of a medical impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged". Id.

However, strict application of this rule to a claim of headache disorder is problematic, as the Second Circuit recognizes that headache disorders often defy objective evaluation. See Drake v. Saul, 839 F. App'x 584, 588 (2d Cir. 2020) ("headaches are subjective symptoms not subject to objective testing"); Ramona R. v. Saul, 2021 WL 732694, *4

(W.D.N.Y. 2021) ("district courts within the Second Circuit, including this court, have repeatedly acknowledged that there is no objective test for migraine headaches") (citing cases); *but see* <u>Gallagher on Behalf of Gallagher v. Schweiker</u>, 697 F.2d 82, 84 (2d Cir. 1983) ("[t]he pain need not be corroborated by objective medical findings, but some impairment must be medically ascertained").

The parties refer the court to Social Security Ruling ("SSR") 19-4p, which provides guidance for "Evaluating Cases Involving Primary Headache Disorders". 2019 WL 4169635, *1. Migraines are an example of a primary headache disorder. <u>Id.</u> at *3. SSR 19-4p reiterates the idea that a medically determinable impairment requires more than a diagnosis or a statement of symptoms. <u>Id.</u> at *6; *see* <u>Kimberly B. v. Commissioner of Social Security</u>, 2024 WL 5141556, *9 (N.D.N.Y. 2024).

However, a diagnosis by a medical source is, according to the SSR, one of four criteria that the Commissioner will consider in establishing a primary headache disorder as a medically determinable impairment. *See* SSR 19-4p, 2019 WL 4169635 at *6. That is, "[the Commissioner] will consider the following combination of findings reported by an [acceptable medical source] when we establish a primary headache disorder as a[ medically determinable impairment]: (1) A primary headache disorder diagnosis from an [acceptable medical source] . . . (2) An observation of a typical headache event . . . by an [acceptable medical source] . . . (3) Remarkable or unremarkable findings on laboratory tests . . . (4) Response to treatment". <u>Id.</u> (numeration added).

Of those four criteria, ALJ Bell relies entirely on the second, *i.e.*, observation of a headache event by a medical source (or lack thereof). ALJ Bell based her conclusion on the lack of evidence of an examination occurring while plaintiff was suffering from acute distress from a

migraine or of any "emergent treatment". [5] at 25. While the guidance advises that a primary headache disorder may "sometimes warrant emergency department visits" (SSR 19-4p, 2019 WL 416963 at *3), the guidance does not suggest that the lack of such visits contravenes the existence of such disorder or its severity.

The other criteria tend to favor plaintiff. Under "[r]esponse to treatment", the Commissioner considers whether the claimant was prescribed medication, and whether such medication was effective in treating the headaches. *See* id. at *3 ("[p]rimary headache disorders . . . are typically severe enough to require prescribed medication"), *6 ("[w]hen evidence in the file from an [acceptable medical source] documents ongoing headaches that persist despite treatment, such findings may constitute medical signs that help to establish the presence of an [medically determinable impairment]"). The record indicates that plaintiff was, for some period of time, prescribed Topamax and Amitriptyline for her headaches, and that such medication was ineffective at managing the headaches. *See* id. at 25, 928.

Finally, there is "[r]emarkable or unremarkable findings on laboratory tests".[3] SSR 19-4p, 2019 WL 4169635 at *6. The SSR explains that, "[t]o rule out other medical conditions that may result in the same or similar symptoms, a physician may also conduct laboratory tests or imaging scans". Id. at *4. "For example, physicians may use magnetic resonance imaging (MRI) to rule out other possible causes of headaches - such as a tumor." Id. This means that "an unremarkable MRI is *consistent* with a primary headache disorder diagnosis". Id. (emphasis added). Reviewing this guidance, I agree with plaintiff that her MRI results being unremarkable does not undermine her claim of migraine headaches and may, in fact, support it.

---

[3]    While an MRI is not a "laboratory test", this criterion goes on to discuss "imaging or other diagnostic [tests]" as well. SSR 19-4p, 2019 WL 4169635 at *6

The record reflects that plaintiff reported symptoms associated with migraine without aura, including nausea, photophobia (light sensitivity), and phonophobia (sound sensitivity). *See* [5] at 928; SSR 19-4p, 2019 WL 416963 at *3. Plaintiff testified that she would need to lie down and close her eyes for approximately 20 minutes for the headaches to subside. [5] at 54, 60. None of these alleged facts were addressed by the ALJ.

With all due deference to administrative findings of the Commissioner, ALJ Bell's stated rationale for rejecting plaintiff's migraine headaches as a medically determinable impairment is insufficient to constitute substantial evidence. *See* Kimberly B. v. Commissioner of Social Security, 2024 WL 5141556, *9 (N.D.N.Y. 2024) ("the ALJ's rationale at step two is insufficient on its own to support his conclusion, as the decision only cites [plaintiff's] "normal" exam findings"); Brandy Marie T. A. v. Commissioner of Social Security, 2019 WL 2264977, *4 (N.D.N.Y. 2019) ("the reasons given by ALJ Ramos for rejecting the migraines . . . are not supported by substantial evidence").

An error at step two can be harmless, if the ALJ proceeds to consider the omitted condition during subsequent steps. *See* Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013). However, as ALJ Bell did not consider plaintiff's headache/migraine condition to be a medically determinable impairment, she did not go on to consider the impact of that condition on plaintiff's RFC. [5] at 25, 27; *see* 20 C.F.R. §404.1545(a)(2) ("[w]e will consider all of your medically determinable impairments of which we are aware . . . when we assess your [RFC]"); Parker-Grose v. Astrue, 462 F. App'x 16, 18 (2d Cir. 2012).

While there may have been grounds in the record for ALJ Bell to properly discount plaintiff's claim of migraine headache (*see* Brian M. v. Commissioner of Social Security, 2023 WL 4867263, *4 (W.D.N.Y. 2023) ("[plaintiff's] conservative and inconsistent

course of migraine treatment is inconsistent with a level of severity that would preclude [her] from sustaining any work activity"), the court may only assess the propriety of an ALJ's decision on the grounds invoked by the ALJ. *See* Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) ("[n]or may we properly affirm an administrative action on grounds different from those considered by the agency"). For these reasons, remand is required.

**C.      Did the ALJ properly assess the medical opinion evidence as to plaintiff's lifting, carrying, and reaching limitations?**

Plaintiff further argues that ALJ Bell erred in making determinations regarding lifting, carrying, and reaching limitations without a relevant medical opinion. [12-1] at 20-32. ALJ Bell did not specify any such limitations in her RFC determination, but did restrict plaintiff to sedentary work. [5] at 27.

On appeal, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether [her] determination is supported by substantial evidence". Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). It is well-established that the ALJ, not any medical source, is responsible for formulating a claimant's RFC. *See* 20 C.F.R. §§404.1546(c), 404.1527(d)(2), 416.946(c), 416.927(d)(2); *see* Curry v. Commissioner of Social Security, 855 F. App'x 46, 48 (2d Cir. 2021).

As such, the RFC need "not perfectly correspond with any of the opinions of medical sources cited in [the] decision", and the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". Matta v. Astrue, 508 F. App'x. 53, 56 (2d Cir. 2013); *see* Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022). Ultimately, "[t]he question is . . . whether the ALJ's conclusion was 'supported by the

record as a whole.'" Nieves v. Commissioner of Social Security, 2019 WL 4565112, *4

(S.D.N.Y. 2019) (*quoting* Tricarico v. Colvin, 681 F. App'x 98, 101 (2d Cir. 2017)).

Here, there were two medical opinions of record that addressed plaintiff's

capacity for lifting, carrying, and reaching. First, consultative medical examiner Dr. Lorensen

opined that plaintiff had moderate-to-marked limitations for lifting and reaching, apparently

resulting from her back and lower extremity issues. Id. at 714. State agency medical examiner

Dr. Lawrence then reviewed Dr. Lorenson's opinion and gave it "great weight", before

proceeding to assess plaintiff with limitations in lifting and carrying - specifically, occasional

lifting and carrying of no more than 20 pounds at a time with frequent lifting or carrying of

objects weighing up to 10 pounds. Id. at 98-100.

ALJ Bell found both opinions "somewhat persuasive", taking exception to their

lifting, carrying, and reaching assessments. Id. at 31-32. While she found that the record

supported "some ambulatory and postural limitations", she found that Dr. Lorenson's marked

limitations as to lifting, bending, and reaching were unsupported because her exam found "full

motion in the major joints of the upper extremities" and the medical record demonstrated "near

full strength and normal findings". Id. at 32. Conversely, she found that the record supported

greater lifting and carrying restrictions than opined by Dr. Lawrence (which were equivalent to a

"light work" exertion level, *see* §404.1567(b)) due to "the reduced strength and spasticity

findings routinely observed by Dr. Silvestri" as well as her "gait disturbances". Id. at 31.

Ultimately, ALJ Bell's RFC determination limited plaintiff to sedentary work, which features

restrictions on lifting and carrying capacity. *See* id. at 27; §404.1567(a).

Taken individually, such treatment would be well within the ALJ's purview to

reject or discount a medical opinion that she finds unsupported by the record. *See, e.g.*, Kimberly

H. v. Commissioner of Social Security, 671 F. Supp. 3d 328, 335 (W.D.N.Y. 2023) ("[a]n ALJ may reject the portions of a medical opinion that are inconsistent with the evidence of record"). However, in diverging from both medical opinions for opposite reasons, she stakes her RFC finding in some enigmatic middle ground between the two. Our courts have long considered such attempts to "split the difference" between medical opinions to be problematic, at least without mooring such a finding to specific functional evidence in the record. *See, e.g.*, Mariani v. Colvin, 567 F. App'x 8, 10 (2d Cir. 2014); Kelly W. v. Commissioner of Social Security, 2022 WL 600838, *4 (W.D.N.Y. 2022).

Further muddying the waters is the fact that Dr. Lawrence considered Dr. Lorensen's opinion to be consistent with the medical evidence of record, and gave it "great weight" before crafting functional limitations that he presumably felt were consistent with that opinion. *See* [5] at 100.[4] "While an ALJ is free to resolve issues of credibility . . . or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998); *see* Gentles v. Commissioner of Social Security, 848 F. App'x 56, 57 (2d Cir. 2021). ALJ Bell interpreted the two opinions as being materially different, which itself is an unexplained departure from the opinion evidence.

While "[n]o principle of administrative law or common sense requires a court to remand a case in quest of a perfect ALJ opinion", Smith v. Berryhill, 740 F. App'x 721, 725 (2d Cir. 2018), errors that demonstrate that the ALJ misconstrued the medical opinion evidence in

---

[4]    Though often employed by consultative examiners, terms like "moderate" and "marked" are ambiguous where, as here, they are left undefined in functional terms. *See* Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013); Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000) (such terms are "so vague as to render [them] useless"). Thus, a naked finding of moderate-to-marked limitations is not necessarily inconsistent with a light work exertional level.

-13-

some material way cast doubt on the conclusions she drew from such evidence. *See* Rubin v. Martin O'Malley, Commissioner of Social Security, 116 F.4th 145, 157 (2d Cir. 2024).

For all these reasons, remand is required.

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [12] is granted to the extent of remanding this claim to the Commissioner for further proceedings consistent with this Decision and Order, and is otherwise denied, and the Commissioner's motion for judgment on the pleadings [14] is denied.

**SO ORDERED**.

Dated: March 25, 2026

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge